> Vernon's Texas Statutes and Codes Annotated
>   Civil Statutes (Refs & Annos)
>     Title 19. Blue Sky Law--Securities (Refs & Annos)

Vernon's Ann.Texas Civ.St. Art. 581-33

Art. 581-33. Civil Liability with Respect to Issuance or Sale of a Security

Effective: September 1, 2001
Currentness

A. Liability of Sellers. (1) Registration and Related Violations. A person who offers or sells a security in violation of Section 7, 9 (or a requirement of the Commissioner thereunder), 12, 23C, or an order under 23A or 23-2 of this Act is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security.

(2) Untruth or Omission. A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security. However, a person is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission. The issuer of the security (other than a government issuer identified in Section 5M) is not entitled to the defense in clause (b) with respect to an untruth or omission (i) in a prospectus required in connection with a registration statement under Section 7A, 7B, or 7C, or (ii) in a writing prepared and delivered by the issuer in the sale of a security.

B. Liability of Buyers. A person who offers to buy or buys a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person selling the security to him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security. However, a person is not liable if he sustains the burden of proof that either (a) the seller knew of the untruth or omission, or (b) he (the offeror or buyer) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

C. Liability of Nonselling Issuers Which Register.

(1) This Section 33C applies only to an issuer which registers under Section 7A, 7B, or 7C of this Act, or under Section 6 of the U.S. Securities Act of 1933, [1] its outstanding securities for offer and sale by or for the owner of the securities.

(2) If the prospectus required in connection with the registration contains, as of its effective date, an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the issuer is liable to a person buying the registered security, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the securities. However, an issuer is not liable if it sustains the burden of proof that the buyer knew of the untruth or omission.

D. Rescission and Damages. For this Section 33:

(1) On rescission, a buyer shall recover (a) the consideration he paid for the security plus interest thereon at the legal rate from the date of payment by him, less (b) the amount of any income he received on the security, upon tender of the security (or a security of the same class and series).

(2) On rescission, a seller shall recover the security (or a security of the same class and series) upon tender of (a) the consideration he received for the security plus interest thereon at the legal rate from the date of receipt by him, less (b) the amount of any income the buyer received on the security.

(3) In damages, a buyer shall recover (a) the consideration the buyer paid for the security plus interest thereon at the legal rate from the date of payment by the buyer, less (b) the greater of:

(i) the value of the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security; or

(ii) the actual consideration received for the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security.

(4) In damages, a seller shall recover (a) the value of the security at the time of sale plus the amount of any income the buyer received on the security, less (b) the consideration paid the seller for the security plus interest thereon at the legal rate from the date of payment to the seller.

(5) For a buyer suing under Section 33C, the consideration he paid shall be deemed the lesser of (a) the price he paid and (b) the price at which the security was offered to the public.

(6) On rescission or as a part of damages, a buyer or a seller shall also recover costs.

(7) On rescission or as a part of damages, a buyer or a seller may also recover reasonable attorney's fees if the court finds that the recovery would be equitable in the circumstances.

E. Time of Tender. Any tender specified in Section 33D may be made at any time before entry of judgment.

F. Liability of Control Persons and Aiders.

(1) A person who directly or indirectly controls a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer, unless the controlling person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

(2) A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer.

(3) There is contribution as in cases of contract among the several persons so liable.

G. Survivability of Actions. Every cause of action under this Act survives the death of any person who might have been a plaintiff or defendant.

H. Statute of Limitations.

(1) No person may sue under Section 33A(1) or 33F so far as it relates to Section 33A(1):

(a) more than three years after the sale; or

(b) if he received a rescission offer (meeting the requirements of Section 33I) before suit unless he (i) rejected the offer in writing within 30 days of its receipt and (ii) expressly reserved in the rejection his right to sue; or

(c) more than one year after he so rejected a rescission offer meeting the requirements of Section 33I.

(2) No person may sue under Section 33A(2), 33C, or 33F so far as it relates to 33A(2) or 33C:

(a) more than three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence; or

(b) more than five years after the sale; or

(c) if he received a rescission offer (meeting the requirements of Section 33I) before suit, unless he (i) rejected the offer in writing within 30 days of its receipt, and (ii) expressly reserved in the rejection his right to sue; or

(d) more than one year after he so rejected a rescission offer meeting the requirements of Section 33I.

(3) No person may sue under Section 33B or 33F so far as it relates to Section 33B:

(a) more than three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence; or

(b) more than five years after the purchase; or

(c) if he received a rescission offer (meeting the requirements of Section 33J) before suit unless he (i) rejected the offer in writing within 30 days of its receipt, and (ii) expressly reserved in the rejection his right to sue; or

(d) more than one year after he so rejected a rescission offer meeting the requirements of Section 33J.

I. Requirements of a Rescission Offer to Buyers. A rescission offer under Section 33H(1) or (2) shall meet the following requirements:

(1) The offer shall include financial and other information material to the offeree's decision whether to accept the offer, and shall not contain an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

(2) The offeror shall deposit funds in escrow in a state or national bank doing business in Texas (or in another bank approved by the commissioner) or receive an unqualified commitment from such a bank to furnish funds sufficient to pay the amount offered.

(3) The amount of the offer to a buyer who still owns the security shall be the amount (excluding costs and attorney's fees) he would recover on rescission under Section 33D(1).

(4) The amount of the offer to a buyer who no longer owns the security shall be the amount (excluding costs and attorney's fees) he would recover in damages under Section 33D(3).

(5) The offer shall state:

(a) the amount of the offer, as determined pursuant to Paragraph (3) or (4) above, which shall be given (i) so far as practicable in terms of a specified number of dollars and a specified rate of interest for a period starting at a specified date, and (ii) so far as necessary, in terms of specified elements (such as the value of the security when it was disposed of by the offeree) known to the offeree but not to the offeror, which are subject to the furnishing of reasonable evidence by the offeree.

(b) the name and address of the bank where the amount of the offer will be paid.

(c) that the offeree will receive the amount of the offer within a specified number of days (not more than 30) after receipt by the bank, in form reasonably acceptable to the offeror, and in compliance with the instructions in the offer, of:

(i) the security, if the offeree still owns it, or evidence of the fact and date of disposition if he no longer owns it; and

(ii) evidence, if necessary, of elements referred to in Paragraph (a)(ii) above.

(d) conspicuously that the offeree may not sue on his purchase under Section 33 unless:

(i) he accepts the offer but does not receive the amount of the offer, in which case he may sue within the time allowed by Section 33H(1)(a) or 33H(2)(a) or (b), as applicable; or

(ii) he rejects the offer in writing within 30 days of its receipt and expressly reserves in the rejection his right to sue, in which case he may sue within one year after he so rejects.

(e) in reasonable detail, the nature of the violation of this Act that occurred or may have occurred.

(f) any other information the offeror wants to include.

J. Requirements of a Rescission Offer to Sellers. A rescission offer under Section 33H(3) shall meet the following requirements:

(1) The offer shall include financial and other information material to the offeree's decision whether to accept the offer, and shall not contain an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

(2) The offeror shall deposit the securities in escrow in a state or national bank doing business in Texas (or in another bank approved by the commissioner).

(3) The terms of the offer shall be the same (excluding costs and attorney's fees) as the seller would recover on rescission under Section 33D(2).

(4) The offer shall state:

(a) the terms of the offer, as determined pursuant to Paragraph (3) above, which shall be given (i) so far as practicable in terms of a specified number and kind of securities and a specified rate of interest for a period starting at a specified date, and (ii) so far as necessary, in terms of specified elements known to the offeree but not the offeror, which are subject to the furnishing of reasonable evidence by the offeree.

(b) the name and address of the bank where the terms of the offer will be carried out.

(c) that the offeree will receive the securities within a specified number of days (not more than 30) after receipt by the bank, in form reasonably acceptable to the offeror, and in compliance with the instructions in the offer, of:

(i) the amount required by the terms of the offer; and

(ii) evidence, if necessary, of elements referred to in Paragraph (a)(ii) above.

(d) conspicuously that the offeree may not sue on his sale under Section 33 unless:

(i) he accepts the offer but does not receive the securities, in which case he may sue within the time allowed by Section 33H(3)(a) or (b), as applicable; or

(ii) he rejects the offer in writing within 30 days of its receipt and expressly reserves in the rejection his right to sue, in which case he may sue within one year after he so rejects.

(e) in reasonable detail, the nature of the violation of this Act that occurred or may have occurred.

(f) any other information the offeror wants to include.

K. Unenforceability of Illegal Contracts. No person who has made or engaged in the performance of any contract in violation of any provision of this Act or any rule or order or requirement hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract.

L. Waivers Void. A condition, stipulation, or provision binding a buyer or seller of a security or a purchaser of services rendered by an investment adviser or investment adviser representative to waive compliance with a provision of this Act or a rule or order or requirement hereunder is void.

M. Saving of Existing Remedies. The rights and remedies provided by this Act are in addition to any other rights (including exemplary or punitive damages) or remedies that may exist at law or in equity.

N. Limitation of Liability in Small Business Issuances. (1) For purposes of this Section 33N, unless the context otherwise requires, "small business issuer" means an issuer of securities that, at the time of an offer to which this Section 33N applies:

(a) has annual gross revenues in an amount that does not exceed $25 million; and

(b) does not have a class of equity securities registered, or required to be registered, with the Securities and Exchange Commission under Section 12 of the Securities Exchange Act of 1934, as amended (15 U.S.C. Section 78*l*).

(2) This Section 33N applies only to:

(a) an offer of securities made by a small business issuer or by the seller of securities of a small business issuer that is in an aggregate amount that does not exceed $5 million; and

(b) a person who has been engaged to provide services relating to an offer of securities described by Section 33N(2)(a), including an attorney, an accountant, a consultant, or the firm of the attorney, accountant, or consultant.

(3) The maximum amount that may be recovered against a person to which this Section 33N applies in any action or series of actions under Section 33 relating to an offer of securities to which this Section 33N applies is an amount equal to three times the fee paid by the issuer or other seller to the person for the services related to the offer of securities, unless the trier of fact finds the person engaged in intentional wrongdoing in providing the services.

(4) A small business issuer making an offer of securities shall provide to the prospective buyer a written disclosure of the limitation of liability created by this Section 33N and shall receive a signed acknowledgement that the disclosure was provided.

**Credits**
Acts 1957, 55th Leg., p. 575, ch. 269, § 33; Amended by Acts 1963, 58th Leg., p. 473, ch. 170, § 12; Acts 1977, 65th Leg., p. 344, ch. 170, § 1, eff. Aug. 29, 1977; Acts 1979, 66th Leg., p. 361, ch. 160, § 8, eff. May 15, 1979; Acts 1997, 75th Leg., ch. 638, § 1, eff. Sept. 1, 1997; Acts 2001, 77th Leg., ch. 1091, § 3.14, eff. Sept. 1, 2001; Acts 2001, 77th Leg., ch. 1091, § 3.16, eff. Sept. 1, 2001; Acts 2001, 77th Leg., ch. 1091, § 3.17, eff. Sept. 1, 2001; Acts 2001, 77th Leg., ch. 1091, § 3.15, eff. Sept. 1, 2001.

**Editors' Notes**

### SAVED FROM REPEAL

<The Uniform Commercial Code, enacted by Acts 1965, 59th Leg., vol. 2, p. 1, ch. 721, provided that the Act did not repeal or diminish arts. 581-1 through 581-39, and further provided that if in any respect there was any inconsistency between those articles and the Commercial Code, the provisions of those articles should control. Acts 1965, 59th Leg., vol. 2, p. 1, ch. 721, was itself repealed by Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, adopting the Business & Commerce Code effective September 1, 1967. However, the latter Act specifically provided that the repeal did not affect the prior operation of the 1965 Act or any prior action taken under it.>

### COMMENT--1963 AMENDMENT

### 2010 Main Volume

by

<Committee on Securities and Investment Banking of the Section on Corporation, Banking and Business Law of the State Bar of Texas>

*Legislative History.* As originally submitted by the State Bar Committee on Securities and Investment Banking, new § 33 was substantially similar to Uniform Securities Act Sec. 410. However, it omitted the subsection

on "Persons Liable" (on which Brown v. Cole, 155 Tex. 625, 291 S.W.2d 704, 59 A.L.R.2d 1011 (1956) will continue to be authoritative) and the provision for recovery of attorneys fees by successful plaintiffs. For the origins and precedents of Uniform Act § 410 (including § 12 of the federal Securities Act of 1933) see Loss & Cowett, Blue Sky Law 389-95 (1958).

In enacting new § 33, the 58th Legislature made a number of additional changes in the Bar proposal, of which these are the more significant:

(A) Deleting language in § 33A(2) which gave the seller a defense of reasonable ignorance of the untruth or omission (if he could prove it), and substituting the present parenthetical language which appears to impose on the buyer the burden of proving that he could not reasonably have known of the untruth or omission.

(B) Adding the last sentences of §§ 33A and 33C to emphasize the preservation of rights under Art. 4004.

(C) Deleting a provision permitting tender to be made any time before judgment.

(D) Revising § 33C:

   [1] To make the straight 3-year statute of limitations apply only to "technical" violations under § 33A(1);

   [2] To make the 3-year statute of limitations for "substantive" violations "open-end", i.e. to run only from the time the purchaser should have known of the violation;

   [3] To condition the type of refund offer which would shorten the limitation period; and

   [4] To limit the refund offer to "technical" violations.

*Background.* The manifest purposes of a civil liability provision are to indemnify victimized purchasers and to encourage private enforcement of the Act. The prior Texas provision fell short of these goals in a number of respects, some of which represented gaping loopholes. (1) Exempt securities and exempt transactions were not covered even though material omissions or misstatements may have been made. (2) The buyer who had disposed of his security was left without a remedy since he could not make the necessary "tender". (3) The tender provision was so technical that it could destroy the buyer's right of recovery even if he still had the security. (4) The required 15 days advance demand on the seller gave him time to disappear and served no other significant purpose.

On the other hand, certain features were unfairly restrictive for sellers. (5) Literally every violation of the Act generated a right of recovery in the buyer, even though it may only have been a late filing of a minor report with the Commissioner or an improper display of a license. (6) There was no objective finality in the limitations period for it depended on when the buyer, with ordinary care, should have discovered the violation.

*Changes Effected.* These shortcomings are largely cured by the 1963 amendments:

   (1) Exemptions are irrelevant if material misstatements or omissions are made.

   (2) Damages are available to a buyer who no longer owns his security.

   (3) There is no requirement that tender be in a particular form or that it be accompanied by income received on the security (which is treated as an offset).

(4) Advance demand is eliminated.

(5) Rescission (other than for material misstatement or omission) is limited to violation of the provisions governing securities registration (§ 7), escrow, expense limitation and prospectus (§ 9), dealer and salesman registration (§ 12), and stop orders (§ 23A and B).

(6) Limitations for "technical" violations (of § 33.A(1) ) now run objectively from the date of the contract of sale, but have been extended from two years to three. However, limitations for material misstatement or omission (§ 33A(2) ) continue to run from the time the buyer should have discovered the violation. (The penultimate sentence of § 33C does not specify that the period is the later of the two there stated, but no other conclusion would be logical.) Here, also, the period has been extended from two years to three.

Other 1963 additions include survivability of causes of action (§ 33(B) ), voidness of attempted waivers of rights granted by the Act (§ 33E) and the limited right of a seller to protect himself, in cases of "technical" violation, by making a refund offer (§ 33C, 2nd-4th sentences). The prior provision, rather broadly making contracts in violation of the Act "voidable", has been replaced by one rendering them unenforceable by the violator (§ 33D).

*A Technical Inconsistency.* The 2nd half of the 2nd sentence of § 33C preserves the rights of a buyer, who has disposed of his security if he receives but rejects a refund offer. But clause numbered (3) in the 4th sentence suggests that he loses his rights if he fails to accept a refund offer (i.e. if he rejects). The former is the dominant intent. The latter relates only to the content of the notice and is not a direct statement of legal consequence; it was apparently written only in contemplation of the buyer who still holds his securities. This technical inconsistency should be resolved in favor of the former provision by judicial decision or legislative amendment. Meanwhile, anyone making a refund offer should consider specifying that buyers who have disposed of their securities may preserve their rights by affirmatively rejecting the offer within 30 days; otherwise, he may find that an implied misrepresentation has vitiated the offer and destroyed the protection sought from it.

**COMMENT--1977 AMENDMENT**

**2010 Main Volume**

By

Committee on Securities and Investment Banking of the Section on Corporation, Banking and Business Law of the State Bar of Texas

BACKGROUND

The 1977 version of § 33 is the product of more than two years of work by the Committee on Securities and Investment Banking of the Section on Corporation, Banking and Business Law of the State Bar of Texas ("the Bar Committee") in collaboration with the staff of the State Securities Board of Texas, the securities industry and those interested in municipal securities. The carefully negotiated compromise reflects, in a balanced way, the interests of buyers, sellers, investors, dealers, issuers and regulators.

The 1977 revision is the third generation of civil liability statutes. Although Texas had a blue sky law from 1913, the first generation of civil liability did not appear until 1941 when a rather rudimentary section was introduced to make "voidable" sales in violation of any provision of the Securities Act, at the election of the purchaser, who could recover the consideration paid (and interest) on tender of the security. Limitations were two years

from actual or constructive discovery of the violation. Acts 1941, 47th Legisl., p. 593, ch. 363, § 1. With minor changes, this provision survived until 1963 when it was replaced by a modification of Uniform Securities Act § 410. The second generation statute pinpointed liability for violation of the securities registration, prospectus, dealer registration and other specified sections of the Act and for material misrepresentation or omissions; allowed recovery of damages if the buyer no longer owned the security; set limitations at three years from sale for technical violations and three years from actual or constructive discovery for misrepresentation or omission; and made lesser changes. The third generation (1977) revision amplified and modified the 1963 version in a number of ways discussed below, but retains the same purposes of indemnifying investors victimized by violations of the Act, encouraging compliance with the Act's regulatory and disclosure provisions, and creating incentive for private enforcement of the Act. The reasons for the 1977 revisions are explained below.

A more extensive analysis of the 1977 amendments is being prepared for Vol. 32, Southwestern Law Journal (1978) by Prof. Alan R. Bromberg.

## COMMENTS ON SPECIFIC SECTIONS

### 2010 Main Volume

The table below compares the new and old versions of § 33 and briefly indicates the nature of the changes and additions. The text which follows gives more details on the changes and additions, and their use and interpretation.

Comparison of New and Old § 33 by Subsection

## GENERAL NOTES

### 2010 Main Volume

| **New (1977)** | **Old (1963)** | **Notes on New** |
| --- | --- | --- |
| § 33A(1) | § 33A(1) | No substantive change |
| § 33A(2) | § 33A(2) | Substantive changes |
| § 33B | ------ | New |
| § 33C | ------ | New |
| § 33D | § 33A | Expands and clarifies |
| § 33E | ------ | New |
| § 33F | ------ | New |
| § 33G | § 33B | No change |
| § 33H | § 33C | Substantive changes |
| § 33I-J | § 33C | Expands and clarifies |
| § 33K | § 33D | No change |
| § 33L | § 33E | No substantive change |

| § 33M | § 33F | No substantive change |

§ 33A(1)--LIABILITY OF SELLERS--REGISTRATION AND RELATED VIOLATIONS. There is no substantive change from old § 33A(1), which derives from Uniform Securities Act § 410(a)(1) and is similar to U.S. Securities Act § 12(1), 15 U.S.C.A. § 77*l* (1). The phrase "person who offers or sells" in §§ 33A(1) and 33A(2) is taken from the U.S. law and is intended to have the same meaning, e.g. including a broker for the seller and, if he solicits, a broker for the buyer. A broad interpretation of this sort implements the definitions of offer and sale in § 4E. Even so construed, § 33A(1) [like §§ 33A(2) and 33B] is a privity provision, allowing a buyer to recover from his offeror or seller [or a seller to recover from his offeror or buyer]. However, some nonprivity defendants may be reached under §§ 33C and 33F. The measure of recovery, which has been expanded and clarified, appears in § 33D.

§ 33A(2)--LIABILITY OF SELLERS--UNTRUTH OR OMISSION. Changes have been made from old § 33A(2) which bring this provision closer to Uniform Securities Act § 410(a)(2) and U.S. Securities Act § 12(2), 15 U.S.C.A. § 77*l* (2). Plaintiffs are relieved from the difficult burden (imposed by old § 33A) of proving that they could not have known of the untruth or omission. As in the old law, all defendants may avoid liability for an untruth or omission by showing that plaintiffs knew of the untruth or omission. On "person who offers or sells" and the privity it requires, see Comment on § 33A(1).

Reasonable Care Defense. The major change in § 33A(2) is that some defendants may avoid liability for an untruth or omission by showing that they did not know and could not, by reasonable care, have known of the untruth or omission. The Uniform and U.S. Acts have the same provision. But the old Texas law was interpreted by one court to deny such a defense, e.g. to a dealer. Cherb v. Weber, Hall, Cobb & Caudle, Inc., CCH Blue Sky L.Rep. ¶71,250 (U.S.N.D.Tex. July 23, 1974). This not only placed an unfair liability on a person who made all reasonable efforts to give complete and accurate information; it deprived him of an incentive to be careful, which the reasonable care defense provides. By the new law a dealer, for example, who makes all reasonable efforts to get complete and accurate information about a company whose security he sells to a customer, is not liable to the customer if there is information the dealer fails to get, or gets in an inaccurate form. The defense is sometimes known as the due diligence defense.

Who May Use Defense. Three classes of persons may use the defense, in varying situations:

(1) Municipal issuers (defined in § 6A) in all situations.

(2) Other issuers but not with respect to untruths or omissions in a prospectus required in connection with a § 7 registration [this roughly corresponds to an issuer's absolute liability for a federal registration statement, U.S. Securities Act of 1933 § 11(b), 15 U.S.C.A. § 77k(b) ] nor with respect to an untruth or omission in a writing prepared and delivered by the issuer in the sale of a security. The last provision is aimed particularly at private placement memoranda and other material used in the sale of a security. But ordinary annual, quarterly and other reports to shareholders, proxy statements, and similar communications are subject to the reasonable care defense unless shown by the plaintiff to have been "prepared and delivered by the issuer in a sale of a security." This is a fact question. Oral communications are also eligible for the defense. It will not be an easy defense for an issuer to establish, since there are few things about itself it does not know, and even fewer it could not reasonably discover.

(3) All other defendants, e.g., dealers (except as to securities of which they are issuers) salesmen, and an issuer's officers and directors, in all situations.

<u>Factors in Reasonable Care</u>. It is neither wise nor feasible to specify in the statute exactly what constitutes reasonable care for the defense in §§ 33A(2), 33B or related parts of 33F(1). Reasonable care is a question of fact to be determined by taking into account all the circumstances. Illustrative of the factors which may be relevant are:

(1) The relationship of the parties,

(2) Their respective knowledge of information about the security in the transaction,

(3) Their relative sophistication and access to such information,

(4) Their respective expectations of benefit from the transaction,

(5) Whether the untruth or omission was in a document prepared for use in the purchase or sale of the security, and

(6) Such other factors as whether the defendant:

(i) Was the issuer of the security

(ii) Was an underwriter of the security in the transaction or in the 40 days before the transaction

(iii) Was a dealer or salesman (as distinct from an ordinary investor)

(iv) Was a principal or agent in the transaction

(v) Published a recommendation for the purchase or sale of the security

(vi) Solicited the purchase or sale

(vii) Reasonably relied on an official offering statement of the United States, District of Columbia, or a state or municipal corporation or political subdivision thereof or a public agency or instrumentality of any of the foregoing which was the issuer of the security

(viii) Reasonably relied on information purporting to be made on the authority of an expert (other than himself). (An expert, for this purpose, is a person whose profession gives authority to a statement made by him.)

This list of factors, which is not intended to be exclusive, was in some of the Bar Committee's early drafts of § 33, but was deleted and submitted in the form of this Comment to the Legislative Committees which considered the 1977 amendments.

§ 33B--LIABILITY OF BUYERS. § 33B is new. It has no analogue in the Uniform Securities Act or in the U.S. statutes, although federal courts have implied liabilities of buyers under U.S. Securities Exchange Act § 10(b), 15 U.S.C.A. § 77j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. § 33B gives investors the right to recover for material untruth or omission when they are sellers defrauded by buyers, e.g. in tender offers or in "going private" transactions. The old law gave rights only to buyers defrauded by sellers. But the violation and injury are essentially the same, so the Act now gives similar remedies, to defrauded buyers in § 33A(2) and to defrauded sellers in § 33B. The two provisions are intended to be construed similarly. In each, plaintiff's knowledge is a defense. All defendants may use the reasonable care defense in § 33B. The factors to be considered for the

defense include those listed in the Comment to § 33A(2). The phrase "offers to buy or buys" is to be construed like the corresponding phrase for sales in §§ 33A(1) and 33A(2); see Comment on § 33A(1) above.

§ 33C--LIABILITY OF NON-SELLING ISSUERS WHICH REGISTER. This new provision has no counterpart in the Uniform Securities Act but is similar in effect to U.S. Securities Act § 11, 15 U.S.C.A. § 77k. An issuer which registers its outstanding securities for sale by someone else--typically a person in control of the issuer--is not a seller and is therefore not liable under § 33A(2) for untruth or omission. The liability is only for material untruth or omission in the prospectus, which is the document given to investors pursuant to § 9C of the Act, or pursuant to U.S. Securities Act §§ 5(b) and 10, 15 U.S.C.A. §§ 77e(b) and 77j. The justifications for the new provision are the great importance of the registration-prospectus process in disclosing information for investor decisions, and the issuer's ideal position for obtaining and presenting such information about itself. § 33C is not intended to create any inference as to when such secondary offerings must be registered. That question continues to be governed by the exemptions, such as § 5C(1), which may be available to the seller. § 33C does not exhaust an issuer's liabilities. An issuer which registers its securities for sale by itself may be liable under § 33A(2). If it should register but doesn't, it is liable under § 33A(1). A non-selling issue may also be liable for the violation of a seller if the issuer is in control of the seller [§§ 33F(1) and 33A] or fraudulently aids him [§§ 33F(2) and 33A].

§ 33D--RESCISSION AND DAMAGES. Pars. (1) and (3) are a clarification and expansion of the damage measure for buyers in old § 33A, and are essentially the same as Uniform Securities Act § 410(a). New pars. (2) and (4) adapt the same principles to sellers who can now recover under § 33B. "Consideration . . . paid" by a buyer [in pars. (1) and (3) ] includes commissions paid by him. "Consideration . . . received" by a seller [in par. (2) ] and "consideration paid the seller" [in par. (4) ] are net after commissions paid by him. The maker of a rescission offer under §§ 33I-J may make his offer subject to the furnishing of reasonable evidence by the offeree as to commissions.

New par. (5), which applies only to § 33C suits against non-selling issuers that register, keeps the issuer from being liable for more than the public price of the registered offering to a plaintiff who bought the registered security in the after market at a higher price. Example: X makes a secondary offering of Y Co. shares owned by him, at $10 a share, and the shares trade at a premium in the aftermarket, where P buys them at $12. The most that P can recover from Y Co. for a defective registration statement is $10, although he may recover $12 from the person selling to him if that person has violated § 33A(2). The reasons for limiting the recovery against the issuer (Y Co.) are that the issuer is not the seller, gets none of the proceeds, and should not bear the risk of an aftermarket move. Of course, nothing gives a plaintiff the right to more than one recovery for the same loss.

Par. (6) allows recovery of costs, which has previously been available under general principles but was not specifically mentioned in the Securities Act.

New par. (7) allows a court to award attorneys fees to a successful plaintiff if the court finds that this would be equitable in the circumstances. Old law did not authorize attorneys fees, but they may be necessary to make an investor whole. An attorneys fee award is not automatic, but rests in the sound discretion of the trial court. Fees might be awarded against some defendants but not others, or to some plaintiffs but not others. All the circumstances should be considered, e.g. the conduct of the defendant in the transaction (for example, fees are more appropriate against a fraudulent defendant than against a negligent or careful one), the conduct of the plaintiff in the transaction, the conduct of both parties in the lawsuit, whether the defendant benefited from the violation, and whether there was a special or fiduciary relationship between the plaintiff and defendant. Recovery of exemplary damages for the same transaction, under common law or Business & Commerce Code § 27.01, should also be considered, since such damages serve in part to cover attorneys fees. Factors such as these are relevant in deciding both whether an award is equitable, and what amount is equitable.

§ 33E--TIME OF TENDER. This is new to the Texas Act but essentially the same as Uniform Securities Act § 410(c).

§ 33F--LIABILITY OF CONTROL PERSONS AND AIDERS. § 33F is new and derives in part from Uniform Securities Act § 410(b) and U.S. Securities Act § 15, 15 U.S.C.A. § 77*o*. Par. (1) makes a control person liable equally with a violator controlled by him. There is a defense that the control person did not know and, in the exercise of reasonable care could not have known of the facts on which the liability is based, e.g. the untruth or omission of material information, or the fact that the securities were not registered and should have been. The reasonable care factors discussed for § 33A(2) are equally applicable here. Control is used in the same broad sense as in federal securities law. See SEC Securities Act Rule 405(f), 17 C.F.R. § 230.405(f) "control . . . means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." Depending on the circumstances, a control person might include an employer, an officer or director, a large shareholder, a parent company, and a management company. Old § 33A allowed recovery only from "any person who sells." Although the phrase would presumably be broadly construed, see Brown v. Cole, 155 Tex. 652, 291 S.W.2d 704, 59 A.L.R.2d 1011 (1956), its scope was unclear, particularly since the 1963 language could be read as narrower than the prior language interpreted in Brown v. Cole. In any event, Brown v. Cole should have no application to the new law, since § 33F provides quite specifically who, besides a person who buys or sells, is liable, and the criteria for such liability. The rationale for control person liability is that a control person is in a position to prevent the violation and may be able to compensate the injured investor when the primary violator (e.g. a corporate issuer which has gone bankrupt) is not.

Par. (2) makes a material aider liable equally with the violator, but only if the aider has the requisite scienter, i.e. intent to deceive or defraud, or reckless disregard. (This is in addition to rights to recover from the violating seller or buyer.) Old law, as noted above, imposed liability only if the aider was a "person who sells." The change is made in view of the high culpability of such an aider. § 33F is not intended to supersede the common law liability of a principal for an agent's acts within the scope of authority; see § 33M.

§ 33G--SURVIVABILITY OF ACTIONS. § 33G is the same as old § 33B and Uniform Securities Act § 410(d).

§ 33H--STATUTE OF LIMITATIONS. The three year period of limitations in the old law has been retained. In the case of untruth or omission, it still runs from actual or constructive discovery of the violation. §§ 33H(2)(a), 33H(3)(a). But a cutoff, which apparently did not exist in the old law, has been added: five years from the purchase or sale. §§ 33H(2)(b), 33H(3)(b). The period can be shortened some by a rescission offer; see below. The reason for cutting off or shortening limitations are, as with any limitations period, to avoid the litigation of stale claims, and to bring finality to transactions. But there is a more acute reason for limitations on liability provisions like §§ 33A, 33B which do not require a plaintiff to show that the violation caused him injury, or even that he relied on an untruth or omission. Here limitations set bounds on the time an investor can play the market at the expense of the violator, who remains liable and is likely to be sued only when the investor fares badly. Thus reasonably short limitations are necessary to prevent an investor from taking unfair advantage of a violation. Even after the 1977 changes, Texas limitations remain substantially longer than in Uniform Securities Act § 410(e) (two years from sale, which may be shortened by rescission offer) and U.S. Securities Act § 13, 15 U.S.C.A. § 77m (one year from violation for registration and related violations; one year from actual or constructive of untruth-omission, with a cutoff at three years from sale). Each of the three paragraphs of § 33H contains three or four events, after any one of which suit is barred; thus the earliest event controls.

Par. (1) applies to registration and related violations. For them the final cutoff is three years from the sale. Suit can be barred earlier by a rescission offer. For example, a rescission offer made 90 days after the sale bars suit

30 days after received (if the offeree does anything besides reject in writing and expressly reserve his right to sue) and one year and 30 days after received (if the offeree so rejects and reserves). The 3-year period would no longer be available. If the 3-year period ends sooner than one year after rejection of the rescission offer, the 3-year period controls. [*] In this latter situation there is a possible inconsistency between § 33I(5)(d)(ii) and §§ 33H(1) and (2). The former requires that a rescission offer state than an offeree who rejects and reserves in writing may sue within one year. It does not require the offer to state that the 3-year period will cut off his rights if it ends earlier. This poses a problem if a rescission offer is made less than a year before the end of the 3-year period [or the 5-year period for untruth-omission in §§ 33H(2)(b) and 33H(3)(b) ], although rescission offers so late will be rare. To avoid misleading an offeree in such a situation, the offeror should state in the offer his position that the 3- or 5-year period will be a final cutoff if it ends before a year after the rejection-reservation. To shorten limitations, a rescission offer must meet the requirements of § 33I but may be made by someone other than the person plaintiffs seeks to sue. For example, a rescission offer for an illegal sale of X Co.'s securities might be made by X Co., by some of its major shareholders, or by a dealer who assisted in the sale. An offer by any one of them is effective as to all of them.

Par. (2) applies to untruth-omission violations in the sale of securities. It preserves the basic pattern of old § 33C: three years from the time plaintiff discovered or should by reasonable diligence have discovered the untruth or omission. To this is applied a new cutoff five years after the sale. By the new provision, a rescission offer can cut short the period in the same way discussed for par. (1) above. For violations occurring before the effective date of the 1977 Act, suits must be brought within five years after the purchase or sale, pursuant to Sec. 2 of the amending bill, which thus provides a retroactive 5-year cutoff as well as a prospective one.

Par. (3) applies to untruth-omission violations in the purchase of securities. It operates the same way as par. (2) for sales.

§ 33I--REQUIREMENTS OF A RESCISSION OFFER TO BUYERS. A person who has incurred (or may have incurred--there is often doubt) a potential liability for untruth or omission, or for failure to register or other violations listed in § 33A(1), may cut short the statute of limitations by making a rescission offer with full disclosure. §§ 33H(1)(b)-(c), 33H(2)(c)-(d), 33I for buyer plaintiffs; §§ 33H(3)(c)-(d), 33J for seller plaintiffs. An investor who accepts a rescission offer is made whole and cannot sue for the violation. One who rejects it in writing and expressly reserves his rights has a year in which he can sue, using the information in the offer. One who does not accept an offer but does not reject and reserve in writing is barred from suing. Old law allowed rescission offer cutoffs only for registration and related violations. The new provision covers untruth-omission violations as well. The purpose of the rescission offer provisions is to encourage those who may have violated to come forward and cleanse themselves by offering to make whole the investors against whom they may have committed a violation. In so doing they relieve themselves of contingent liabilities (except as to rejecters and reservers in writing) which they might otherwise be required to show in their financial statements and which might impede their future financing or operations.

§ 33I expands and clarifies the rescission offer prescriptions of old § 33C. There is no comparable provision in the Uniform or U.S. Acts. Par. (1) is a full disclosure requirement; it is new in § 33, although § 29C would have had a similar effect. Par. (2) broadens the choice of an escrow bank by permitting a non-Texas bank to be used if the Commissioner approves. Pars. (3)-(4) clarify the amount to be offered, by cross reference to the rescission and damages language of § 33D. Par. (5) specifies information to be included in the offer to help the offeree decide whether to accept or reject. Par. (5)(a) requires the offer terms to be as specific as possible, but recognizes that some of the relevant information may be known to the offeree but not to the offeror. The statute mentions the value of the security when it was disposed of by the offeree. Another example is the commissions paid by the offeree; see Comment on § 33D above, first paragraph. Par. (5)(d) requires the cutoff effect to be stated conspicuously in the offer. This means boldface, contrasting type, underlined or otherwise reasonably designed

to be noticed. See the definition of "conspicuously" in Texas Business Corporation Act art. 1.02A(19). Par. (5) (e) calls for enough information on the nature of the violation so that the offeree can determine the rights he has apart from the rescission offer. Nothing requires the offeror to admit that a violation has occurred; indeed, he may well not know, because of uncertain facts or law. Thus it should suffice to say that "In March 1978 X Co. sold 10,000 shares of its common stock without registration under the Texas Securities Act; the sales may have been in violation of § 7 of that Act, creating liability under § 33A(1) of the Act." The company might add: "The Company believed that the sales were exempt from registration under § 5.I of that Act but facts recently coming to its attention create uncertainty whether the exemption was fully complied with." For an omission violation, something of this sort should suffice: "In the sale the company failed to disclose [certain information]. Although the Company does not believe that the information was material, a court might decide that it was, and that the Company is liable to buyers under § 33A(2) of the Texas Securities Act." Untruth or omission in a rescission offer, it should be emphasized, is not only a separate violation of § 29C; it vitiates the rescission offer as a shortener of the statute of limitations.

§ 33J--REQUIREMENTS OF A RESCISSION OFFER TO SELLERS. New § 33J is symmetrical with § 33I, serves a corresponding purpose and is intended to be construed similarly.

§ 33K--UNENFORCEABILITY OF ILLEGAL CONTRACTS. § 33K is the same as old § 33D and Uniform Securities Act § 410(f), and is derived from U.S. Securities Exchange Act § 29(b), 15 U.S.C.A. § 78cc(b). Contracts in violation of the Board's rules (adopted by authority of § 28-1) are unenforceable as well as contracts in violation of the Act.

§ 33L--WAIVERS VOID. § 33L is essentially the same as old § 33E, Uniform Securities Act § 410(g) and U.S. Securities Act § 14, 15 U.S.C.A. § 77n. § 33L does not apply to--and therefore does not diminish the effectiveness of--(1) a bona fide release or settlement of an existing claim, whether or not a suit has been filed, or (2) a rescission offer under §§ 33H-J.

§ 33M--SAVING OF EXISTING REMEDIES. § 33M is essentially the same as old § 33F, Uniform Securities Act § 410(g), and U.S. Securities Act § 16, 15 U.S.C.A. § 77p. The parenthetical reference to exemplary damages replaces--without substantive change--references at the end of old §§ 33A and 33C to exemplary damages and art. 4004 (now Business & Commerce Code § 27.01). Thus all common law and statutory liabilities outside the Texas Securities Act, including § 27.01 (which permits triple damages in some instances), remain intact and may be used along with the Texas and U.S. Securities Act liabilities.

Notes of Decisions (335)

Footnotes

| | |
|---|---|
| 1 | 15 U.S.C.A. § 77f. |
| * | The Texas Securities Commissioner disagrees, believing that the one year period after rejection controls, and that a rescission offer which states the opposite does not comply with § 33I or § 33J and is therefore misleading and ineffective to cut off liability. If the Commissioner is right, it would rarely be worth making a rescission offer during the last year before limitations are expected to run. Indeed, until the question is clarified by the Legislature or the courts, the making of a last-year offer is probably inadvisable. |

Vernon's Ann. Texas Civ. St. Art. 581-33, TX CIV ST Art. 581-33
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.